UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

IN RE: JOSEPHINE ASHWORTH  CASE NUMBER 18-81024
*Debtor-in-Possession*

---

**DEBTOR'S ==AMENDED== ==AND== ==RE-STATED== CHAPTER 12 PLAN**

---

Josephine Ashworth, debtor-in-possession, proposes the following Chapter 12 Plan, to-wit:

## ARTICLE I
## PROPONENT AND DATE

This plan is submitted by Josephine Ashworth and is ==dated August 11, 2020==, and shall hence forth be known as the Chapter 12 Plan. ==The portions amended are highlighted.==

## ARTICLE II
## ELIGIBILITY

Debtor herein is an individual who qualifies for relief under the terms and provisions of Chapter 12 of Title 11 of the United States Code, the Bankruptcy Code as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98-353, and the Bankruptcy Judges, U.S. Trustees and Family Farmer Bankruptcy Act of 1986, P.L. 99-554, the Bankruptcy Reform Act of 1994, P.L. 103-394 and The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) Pub. L. 109-8, as amended.

## ARTICLE III
## DEBTORS' RIGHTS

A. Debtor shall remain in possession of her assets and continue the operation of her business until such time as she decides to exercise the option granted to her under the provisions of Chapter 12 of Title 11 of the United States Code to sell all or part of her assets in accordance with 11 USC 1206, free and clear of interests and after notice and opportunity for a hearing. Provided the sale shall be by the Trustee and the claim of any party claiming a lien on the property sold shall be referred to the proceeds of such sale.

B. Title to the debtor's property shall revert to her upon entry of a final order of confirmation of this Plan, in accordance with Section 1228 (b) of Chapter 12 of the United States Bankruptcy Code. However, the re-vesting of title shall not extinguish the rights and powers of the Debtor, as debtor-in-possession, but shall include the assignment of such rights and powers to the debtor so that she may prosecute claims after confirmation. Further, as provided in 11 U.S.C. 1228(c), property vesting in the

debtor under 11 USC 1228(b) shall be free and clear of any claim or interest of any creditor not provided for in the Plan.

      C. Notwithstanding any other provision of this Plan, the Debtor reserves the right to object to and/or defend against any and all claims filed in this case.

      D. Debtor may pre-pay any payments or installments under this Plan without penalty, notwithstanding any provision of any security device or promissory note to the contrary.

      E. Debtor shall retain the right, after notice and hearing to seek post confirmation credit with assets which are re-vested in the debtor by virtue of confirmation of this Plan. Should debtor seek credit from the United States Department of Agriculture – Farm Service Agency (USDA – FSA), then, in addition the following may apply: (a.) As crops are sold, the proceeds will be applied on the FSA crop lien in preference to any other debts, including administrative expenses, (b.) as crop proceeds are received, FSA will have the authority to release funds for cash rent and/or essential harvest expenses, and, (c.) essential immovable property (real estate) and movables (chattels) shall not be distributed during the crop year.

      F. Following confirmation of the plan the debtor shall be entitled to retain the services of an accountant or other tax professional for the purpose of preparing her tax returns for any year in which the debtor is in Chapter 12. The fees for the services of such accountant or tax professional shall be considered as expenses incurred in the ordinary course of the debtor's business and may be paid by the debtor or the Trustee without further order of the court.

      G. Entry of a final order confirming the plan shall entitle debtor to utilize funds received by her or the Trustee from government price support programs, disaster programs, sales of livestock or crops or agriculture products or similar funds for plan payments, crop production, livestock production or reasonable and necessary living expenses for any year in which this case remains pending on the docket of this court, with the concurrence of the Trustee and without the necessity of further action or court order.

## ARTICLE IV
## DEBTORS' DUTIES

      A. Debtor shall submit all future disposable income to the supervision and control of the Chapter 12 Trustee as is necessary for the execution of this plan during the pendency of this case. She agrees to pay sufficient funds to the Trustee to complete the plan as stated herein. Debtor will pay annually to the Trustee for five (5) years (and directly to creditors thereafter) a sum sufficient to pay all of the secured claims provided for hereinafter. The term "disposable income" shall have the meaning as stated in 11 U.S.C. 1225(b)(2).

Final distribution of the funds remaining in the Trustee's possession at the time of plan completion shall be determined upon the Trustee's application to this Court for approval of a Final Accounting, after notice and hearing.

B. Upon confirmation, the Trustee will receive a crop lien on the Debtor's crops and an assignment of all ASCS payments and crop insurance proceeds which the Debtor receives during the first five (5) years. The crop lien will be registered with the Louisiana Department of Agriculture and Forestry, Louisiana Central Registry, and a certified copy mailed to the Chapter 12 Trustee. However, the Trustee will subordinate his lien to any and all lenders which will provide crop loans to the Debtor.

C. Debtor agrees to provide financial statements and periodic reports as requested by the Trustee and to file such reports as may be required during the entire life of the Plan including monthly cash receipts and disbursement statements.

D. Five (5) full years of payments will be disbursed under the supervision of the Chapter 12 Trustee before Debtors will be eligible for a Discharge.

E. Pursuant to La. R.S. 3:3656(B) a typed copy of UCC-1F will be submitted by the Debtor to the Chapter 12 Trustee no later than January 15th of each year along with a money order in such amount as is necessary, made payable to the Clerk of Court in and for the parish designated by the Trustee. The lien of the Trustee described herein shall exist for a period that the Trustee is responsible for disbursement of plan payments or until the case is terminated.

F. Monthly payments to creditors on vehicles and residential mortgages may be made directly to the creditors by the debtor, with the consent of the Trustee, with evidence of payment to be provided to the Trustee. The Trustee shall reserve the right to demand and receive the fees of the trustee from these payments as provided by law.

G. Payments from crop proceeds or the sale of livestock will be made to the Trustee as the same are sold, except for such sums as the Debtor may be entitled to withhold therefrom for the expenses of the crop or incurred by the livestock, taxes, rents, anticipated living expenses, and other items so authorized by this Plan, the Trustee or this Court.

H. Debtor shall make no capital improvements and shall hold no funds in reserve (except where specifically authorized) without permission of the Court and concurrence of the Trustee.

## ARTICLE V
## FARM AID PROGRAMS

A. Debtor may seek and shall be able to participate in government farm aid programs or any other program instituted under the supervision of the U.S. Department of Agriculture or administered by the Commissioner of Agriculture for the State of

Louisiana after confirmation of this Plan without the necessity of further action by this Court. The Debtors shall be allowed to enter the Government Loan Program and/or mortgage crops to the Government to participate in the Government Loan Programs without orders of Court.

B. Upon entry of an order of confirming this plan, the debtor shall be authorized to do the following, without further orders of the Court:
    (a.) participation in government program benefits, such as commodity loans, government support payments, government subsidy payments and assignments of such benefits;
    (b.) mortgage or encumber any crop or livestock produced by them and harvested by her in the years of the term of this plan prior to the closing of this case to Commodity Credit Corporation (CCC) under any and all applicable provisions of that agency, under the terms of which:
> (1) CCC is granted priority over any and all other claims against the debtors' crops produced during the term of this plan, including administrative and other priority expenses; and
> (2) CCC shall be empowered to take possession of any crops produced by the debtors in accordance with the Price Support Loan Regulations without application to this Court for any additional proceedings or authority, and to dispose of the crops in accordance with the Price Support Loan Program. Program

## **ARTICLE VI**
## **CLAIMS**

A. To the extent the Plan proposes to reduce in amount any claim filed by any creditor or party in interest claiming any mortgage, lien or privilege or other security interest in property of the Debtor's bankruptcy estate, the Plan shall constitute an objection to such proof of claim pursuant to Federal Rule of Bankruptcy Procedure 3007.

B. The hearing on such objection to claim shall be at the same date and time as that first fixed for hearing on confirmation of the Plan.

C. Creditors and parties in interest desiring to object to the Plan insofar as it modifies their claim of a security interest or the amount of their secured claim under 11 U.S.C. 506 (a) shall file a response within the time allowed for filing objections of confirmation of the Plan.

D. Only claims properly filed and documented pursuant to Federal Rule of Bankruptcy Procedure 3001 and 3003 shall be considered as having been filed in this case and be entitled to any distribution under this Plan. Any claim not timely filed shall not receive a distribution under this Plan and shall be canceled upon payment of the last payment called for by this Plan.

E. Payments to secured creditors may come due or be paid by the Trustee in the payments made under this Plan when less than a full years interest shall have accrued. In that event, the Trustee may make a payment equivalent to a complete annual amortized installment if funds are available for the same. Should any payments be so made, that payment shall be imputed first to earned interest, with the balance of said payment imputed to principal reduction. This payment shall be considered in the schedule of payments as one annual payment; and, the remaining principal balance shall be re-amortized over the payment period thereafter remaining at the rate of interest as provided in the plan.

F. The Trustee shall make payments to all creditors as set forth in the Plan during the term of the Plan. Any disposable income of the debtor remaining after payments in years one (1) through four (4) of the plan shall be retained by the Trustee. The debtor may, with concurrence of the Trustee and authorization of the Court following notice and hearing, utilize all of a portion of such funds for repairs, capital improvements, crop production, extraordinary expenses, or such other purposes as the court may authorize. Any such accumulated funds remaining at the conclusion of the case shall be distributed by the Trustee to the unsecured creditors, after deduction of the fee of the Trustee, on a pro-rata basis.

G. Insofar as this plan purports the transfer of property to creditors, confirmation of this plan shall constitute authority for such transfer without the necessity of an order granting relief from the automatic stay or abandonment or further orders of the court.

H. The only liens and/or privileges, filed in the public records or unfiled, which shall remain extant on property of the debtor's estate shall be those specifically provided for in the plan. All other liens and/or privileges, consensual or nonconsensual, judicial, conventional, or otherwise, shall be cancelled and erased from the public records upon confirmation of this plan. The debtor shall be entitled to obtain an ex parte order of this court directing and ordering the appropriate recorder of liens and/or privileges to erase and cancel such lines and/or privileges upon entry of a final order of confirmation.

## ARTICLE VII
## TERM

The term of this Plan is five (5) years from confirmation thereof but, with the exception of those claims whose term exceeds five (5) years as set forth herein, includes only four (4) years of plan payments due to the downturn in debtor's business during 2020 as the result of the COVID-19 pandemic. Except as may expressly be stated herein to the contrary no payments shall be due June 1, 2020, the said payment being deferred until June 1, 2021.

# ARTICLE VIII
# LEASES

Debtor assumes all leases in existence at the time of the filing of this case, except those rejected previously in the case or expressly or tacitly rejected in this Plan.

# ARTICLE IX
## Administrative Claims

The Trustee shall disburse dividends to all creditors entitled to priority under 11 U.S.C. 507 unless the holder of a particular claim agrees to a different treatment of such claim. These claims will be paid in full by deferred payments in such priority installments as the Trustee in his sole discretion deems appropriate. Attorney fees will be paid after court approval in preference and priority to all other plan payments.

# ARTICLE X
## Claim of Caliber Home Loans

This creditor holds a first lien on the following described immovable property, used as a home by Josephine Ashworth, to-wit:

Lot 23 of Forest Hill Park, Section II, Rapides Parish, Louisiana, as per plat thereof recorded at Conveyance Book 822, Page 573, of the records of Rapides Parish, Louisiana, bearing a municipal address of 15 Oak Drive, Forest Hill, Louisiana.

This lien was obtained by assignment from Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender, Inc., Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans, Inc. with a balance of $16,048.70.

This claim is recognized as fully secured in the amount of $16,262.80, and will be paid in five annual installments together with seven per cent (7%) interest, which installments are in the amount of $3,841.92, beginning September 1, 2019, and due and payable each year thereafter, until the same is paid in full.

==The payment due June 1, 2020, will be deferred to June 1, 2021, due to the downturn in business as the result of the COVID-19 pandemic.==

# ARTICLE XI
## Claim of North Louisiana Land Corporation

This creditor is secured by a first lien on the following described immovable property, used as a home by Josephine Ashworth, to-wit:

Lots 18 and 19 of Forest Hill Park, Section II, Rapides Parish, Louisiana, as per plat thereof recorded at Conveyance Book 822, Page 573, of the records of Rapides Parish, Louisiana. This property is used in the nursery operations of Josephine Ashworth.

The claim of North Louisiana Land Corporation is represented by an Act of Collateral Mortgage, dated January 23, 2014, and filed and recorded January 30, 2014, and at MOB 2785, Page 37

In addition, this creditor holds a lien on the following described immovable property, which is second and inferior to that lien of Caliber Home Loans, to-wit:

Lot 23 of Forest Hill Park, Section II, Rapides Parish, Louisiana, as per plat thereof recorded at Conveyance Book 822, Page 573, of the records of Rapides Parish, Louisiana, bearing a municipal address of 15 Oak Drive, Forest Hill, Louisiana.

The claim of North Louisiana Land Corporation is represented by an Act of Collateral Mortgage, dated January 23, 2014, and filed and recorded January 30, 2014, and at MOB 2785, Page 35

This lien was obtained by assignment from Equity Home Lenders, Inc. and C & W Property Services, L.L.C.

This claim is recognized as fully secured in the amount of $74,392.78, and will be paid in Fifteen (15) annual installments together with seven per cent (7%) interest, which installments are in the amount of $8,042.52, beginning June 1, 2019, and due and payable each year thereafter, until the same is paid in full.

==The payment due June 1, 2020, will be deferred to June 1, 2021, due to the downturn in business as the result of the COVID-19 pandemic.==

### ARTICLE XII
*Claim of American Honda Finance Corporation (Honda)*

This creditor is secured by a lien on 2015 Honda SRV automobile. As this vehicle has in excess of 100,000 miles on it, it has a fair market value of $11,825.00, and this claim will be recognized as secured in that amount. The secured portion of this claim will be paid together with 7% interest, in 60 installments of $232.79, with the unsecured portion of this claim being paid along with Class XVII creditors. Payments will commence thirty (30) days after entry of a final order of confirmation of this Plan.

## ARTICLE XIII
### *Claim of* AmeriCredit Financial Services, Inc. dba GM FINANCIAL

This creditor holds a security interest in a 2015 Dodge Ram Truck. As this vehicle has in excess of 200,000 miles on it, and is in poor condition, it has a fair market value of $18,900.00, and this claim will be recognized as secured in that amount. The secured portion of this claim will be paid together with 7% interest, in 60 installments of $372.07, with the unsecured portion of this claim being paid along with Class XVII creditors. Payments will commence thirty (30) days after entry of a final order of confirmation of this Plan.

## ARTICLE XIV
### Claim of United States of America, Department of Treasury – Internal Revenue Service (IRS)

The debtor has received information reflecting that the IRS has the following claims for income taxes, as follows:

| Tax Period | Amount |
|---|---|
| 2015 | $27,086.28 |
| 2014 | $ 4,249.33 |
| 2013 | $ 2,020.44 |
| 2012 | $ 2,157.77 |

The priority portion of these claims will be paid in preference to unsecured claims. Payments will commence thirty (30) days after entry of a final order of confirmation of this Plan.

The unsecured portion of this claim being paid along with Class XVII creditors.

## ARTICLE XV
### Claim of Louisiana Department of Revenue

The debtor has received information reflecting that the Louisiana Department of Revenue and Taxation has a claim for income tax in the amount of $5,731.55, of which the sum of $3,322.76, is entitled to priority debt.
The priority portion of this claim ($3,322.76) will be paid in preference to unsecured claims. Payments will commence thirty (30) days after entry of a final order of confirmation of this Plan.
The unsecured portion of this claim being paid along with Class XVII creditors.

## ARTICLE XVI
**Claim of United States Department of Transportation – Federal Motor Carrier Safety Administration (FMCSA)**

The FMCSA has asserted a claim in the amount of $7,080.00 which will be paid in along with unsecured claims as set forth in Class XVII.

## ARTICLE XVII
*Claim of Unsecured Creditors*

The Debtor will make four (4) annual payments of her disposable income which will be divided on a pro rata basis among these creditors. After that time, the remainder due on any unsecured portions of secured claims or unsecured claims will be cancelled. Disposable income is defined as being that sum remaining after payment of expenses of crop production, and distribution, as well as reasonable and necessary living expenses, plan payments to secured claims and administrative expenses and the fee of the Chapter 12 Trustee. The minimum payment will be in the amount of $3,700.00, per year for four (4) years.

LAW OFFICE OF,

**/S/ THOMAS R. WILLSON**
**THOMAS R. WILLSON**
**1330 JACKSON STREET**
**ALEXANDRIA, LOUISIANA 71301**
**ATTORNEY FOR DEBTOR (#13546)**
**PH. (318) 442-8658**
**FAX: (318) 442-9637**
**rocky@rockywillsonlaw.com**